UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JASON PLOETZ,

Plaintiff,

v.

WINONA COUNTY; CITY OF STOCKTON; WINONA COUNTY SHERIFF'S DEPARTMENT; WINONA COUNTY ATTORNEY'S OFFICE; WINONA COUNTY HIGHWAY DEPARTMENT; MAUREEN HOLTE; DAVID KRAMER; RON GANRUDE; DEPUTY JOHN DOE; OFFICE OF SENATOR JEREMY MILLER; MAUREEN WATSON; OFFICE OF CONGRESSMAN BRAD FINSTAD; THIRD JUDICIAL DISTRICT COURT; LAURA M. PROVINZINO; KEVIN MARK; MATTHEW OPAT; CHRIS MEYER; MINNESOTA DEPARTMENT OF HUMAN RIGHTS; and ALL RELATED SUBDIVISIONS, OFFICIALS, AND EMPLOYEES,

Defendants.

Case No. 26-CV-0704 (PJS/DJF)

ORDER

---

This matter is before the Court on plaintiff Jason Ploetz's Complaint for Damages, Declaratory Relief, and Injunctive Relief, ECF No. 1 ("complaint"), and on his Application to Proceed *In Forma Pauperis*, ECF No. 4 ("IFP application"). For the

following reasons, the Court dismisses most of this action but allows a couple of claims to proceed against defendants Winona County and "Deputy John Doe."[1]

## I. BACKGROUND

### *A. Parties*

Ploetz, a resident of Winona, Minnesota, identifies himself as a "100% disabled combat veteran" with post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI"). Compl. 1. He alleges that he uses a "medically necessary service dog" named Leo, and that Leo's status as a service animal was recognized in 2019 by the Winona County District Court. *Id.* at 1, 5.

The complaint names a large array of defendants: Winona County (and several of its departments); the City of Stockton, Minnesota; Maureen Holte (apparently a Winona County employee); David Kramer (a Winona County Highway Department employee); Ron Ganrude (the Winona County sheriff); a "Deputy John Doe" with the Winona County Sheriff's Department; the office of Minnesota Senator Jeremy Miller; Maureen Watson (identified as a legislative assistant to Senator Miller); the office of U.S.

---

[1] Ploetz also moves for accommodations under the Americans with Disabilities Act and the Rehabilitation Act. His motion is denied, as these provisions do not apply to federal courts. *See Roman v. Jefferson at Hollywood LP*, 495 F. App'x 804, 806 (9th Cir. 2012); *Henderson v. Minnesota*, No. 19-CV-135 (MJD/ECW), 2019 WL 2223950, at *1 n.2 (D. Minn. May 23, 2019). To the extent Ploetz requires a specific accommodation (such as the extension of a particular deadline), he may make a request at that time.

Congressman Brad Finstad; the Third Judicial District Court;[2] U.S. District Judge Laura M. Provinzino; Kevin Mark (a senior Minnesota state-court judge); Matthew Opat (a Minnesota state-court judge); Chris Meyer (a Winona County commissioner); the Minnesota Department of Human Rights ("MDHR"); and "all related subdivisions, officials, and employees." *See, e.g.*, *id.* at 1, 3–5.[3]

*B. The July 2023 Incident*[4]

The course of events that gave rise to the complaint began on July 17, 2023. *See id.* at 5–6. Ploetz alleges that on that date he entered the "public lobby" of the Winona County Highway Department with Leo "to address environmental violations affecting his veteran conservation property." *Id.* at 6. These violations apparently involved the County mowing Ploetz's property with "contaminated equipment," which, Ploetz contends, caused environmental damage and spread "invasive species." *Id.* at 7.

---

[2] Winona and Winona County are located in Minnesota's Third Judicial District.

[3] The complaint asserts that Ploetz sues defendants "in their individual and/or official capacities where applicable," and that he seeks declaratory and injunctive relief under *Ex Parte Young* against "certain defendants." Compl. 3.

[4] Ploetz attached over 300 pages of exhibits to his 15-page complaint, including pages with notations about the exhibits' contents. The Court has skimmed these materials to identify (as best as possible) some of the defendants who are not clearly identified in the complaint itself. But Ploetz apparently wants the Court to read through all of these materials to identify potential claims and legal arguments for him. The Court declines to do so. It is the plaintiff's job, not the Court's, to draft a viable complaint. *See, e.g.*, *Dopp v. Wray*, No. 23-CV-3804 (PJS/DJF), 2024 WL 51284, at *1 n.1 (D. Minn. Jan. 4, 2024). The Court's discussion is therefore limited to allegations in the complaint itself.

While inside the lobby, Kramer allegedly told Ploetz that Leo "is not welcome in the building" and demanded "paperwork" to prove Leo's status as a service animal. *Id.* at 6. Ploetz alleges that he "did not cause a disturbance," but stepped outside voluntarily and cooperated with law enforcement. *Id.*

*C. Alleged Retaliation and Property Destruction*

Ploetz alleges that, after he reported the July 2023 incident as a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., his dispute with Winona County expanded. Ploetz alleges that a "sheriff's deputy contacted [him] unsolicited," parked near his house, and asked to meet him "offline." Compl. 7. The deputy also allegedly told Ploetz that the deputy would attend a "County meeting" at which Ploetz intended to speak. *Id.* Ploetz says the deputy's comments made Ploetz "fear[] attending the meeting" and so "silenc[ed] protected activity." *Id.*

The complaint also suggests that "within hours" after Ploetz submitted an "ADA demand letter," additional "retaliatory mowing" occurred on his property. *Id.* at 9.

*D. Administrative and Institutional Grievances*

The complaint further alleges that various entities and individuals failed to respond adequately to Ploetz as he continued to complain about the July 2023 incident. Ploetz alleges that the Winona County Attorney's Office, when communicating with the MDHR, made discriminatory comments about him and omitted both a police report

that supports his version of events and a court order confirming Leo's service-dog status. *Id.* at 8.

Ploetz alleges that defendant Holte, at some unspecified time, failed to identify herself as an ADA coordinator, provide him with ADA grievance procedures, intervene after he suffered ADA discrimination, or prevent unlawful retaliation against him. *Id.* at 9. He further alleges that the offices of Senator Miller and Congressman Finstad provided incorrect or misleading ADA guidance, that Senator Miller's office misrepresented service-dog laws (causing "confusion and delay"), and that Congressman Finstad's office gave "incorrect ADA guidance" and "dismissed" Ploetz's concerns. *Id.* at 10.

Finally, Ploetz maintains that the Third Judicial District Court and various judicial officers repeatedly "failed to identify ADA coordinators," refused Ploetz "ADA accommodations," "ignored disability evidence," and dismissed his claims using an ostensibly improper "not mining for nuggets" standard. *Id.* at 11. Ploetz also alleges that a court (presumably a state court) denied his petition for a harassment restraining order "without providing an ADA Coordinator or accommodations." *Id.* at 11–12.

*E. Causes of Action and Request for Relief*

The complaint asserts ten counts: (I) disability discrimination under Title II of the ADA, 42 U.S.C. § 12132, based on Ploetz's alleged exclusion from a public facility because of his service dog; (II) disability discrimination under the Rehabilitation Act, 29

U.S.C. § 794; (III) retaliation under Title V of the ADA, 42 U.S.C. § 12203, including allegations that Ploetz suffered intimidation and property destruction in retaliation for engaging in protected activity; (IV) denial of equal protection under the Fourteenth Amendment; (V) denial of due process under the Fifth and Fourteenth Amendments; (VI) general civil-rights violations under 42 U.S.C. § 1983; (VII) failure to designate an ADA coordinator under 28 C.F.R. § 35.107; (VIII) failure to provide public notice of ADA obligations under 28 C.F.R. § 35.106; (IX) "[e]nvironmental [v]iolations" under Minn. Stat. § 18.78; and (X) demands for declaratory and injunctive relief. Compl. 12–13.

For relief, Ploetz seeks $3,000,000 in compensatory damages for emotional distress, exacerbation of his PTSD and TBI symptoms, and property damage allegedly caused by defendants' mowing. *See id.* at 2, 13–15. He also seeks extensive injunctive relief. *See id.* at 14–15.

## II. ANALYSIS

### *A. Standards of Review*

Rather than pay this action's filing fee, Ploetz submitted the IFP application, which seems to establish that, as a financial matter, Ploetz qualifies for *in forma pauperis* ("IFP") status. But under the federal statute governing IFP cases, a "court shall dismiss [an IFP matter] at any time if the court determines that . . . the action . . . is frivolous . . . ; fails to state a claim on which relief may be granted; or . . . seeks monetary relief against

a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When evaluating whether a complaint states a viable claim, a court treats the complaint's factual allegations as true and grants the plaintiff every reasonable inference. *See Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). A complaint need not provide exhaustive detail, but it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must also "state a claim to relief that is plausible on its face." *Id.* at 570. Courts read *pro se* complaints like Ploetz's generously, but *pro* se complaints must nevertheless allege sufficient facts to support each claim. *See Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741 (8th Cir. 2019). Furthermore, a federal court must dismiss a claim whenever it concludes that it lacks subject-matter jurisdiction over that claim.

*B. Defendants for Which the Complaint Lacks Allegations*

Several defendants are not mentioned in any substantive allegation in the complaint. Specifically, the complaint does not describe what Ganrude, Judge Mark,

Judge Opat, Chris Meyer, and the MDHR did or failed to do that would render them liable to Ploetz.[5] The Court therefore dismisses the complaint as to these defendants.

*C. Eleventh Amendment Sovereign Immunity*

The complaint does contain allegations about certain state-related defendants, including the Third Judicial District Court and the Office of Senator Miller. The Third Judicial District Court is an agency of the State of Minnesota, as is Senator Miller's office. Defendant Watson is alleged to work for Senator Miller's office, so any claim for damages against her in her official capacity is treated as a claim against the State itself. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

The Eleventh Amendment generally bars federal courts from hearing suits against a State. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996). Two main exceptions exist: when a state consents to suit, and when Congress validly abrogates state sovereign immunity. *See id.* Minnesota has not consented to be sued in federal court, and § 1983 does not abrogate state sovereign immunity. *See Hummel v.*

[5] The complaint mentions MDHR, but only to describe evidence presented *to* MDHR by the Winona County Attorney's Office. *See* Compl. 8. There are no allegations that MDHR itself did something unlawful.

*Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 587 (D. Minn. 2020). The Court therefore dismisses the § 1983 claims against the Third Judicial District Court and the Office of Senator Miller, as well as any § 1983 claims against Watson in her official capacity (save for any claims for prospective injunctive and declaratory relief).[6]

Ploetz's ADA claims require a different analysis. In *Tennessee v. Lane*, the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity for claims "implicating the fundamental right of access to the courts." 541 U.S. 509, 533–34 (2004). The Court further held in *United States v. Georgia* that Title II also validly abrogates sovereign immunity to the extent it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." 546 U.S. 151, 159 (2006).

Ploetz's ADA claims against the Third Judicial District Court arguably relate to Ploetz's access to state courts. *See* Compl. 10–12. Sovereign immunity therefore does not bar those claims, and they will proceed to merits evaluation.

Ploetz's ADA claims against Senator Miller's office and Watson in her official capacity are a different matter. These claims appear to relate to Watson misunderstanding ADA rules and service-dog regulations. *See id.* at 10. This conduct

---

[6] The Eleventh Amendment does not bar claims for prospective injunctive or declaratory relief against state officials sued in their official capacities. *See Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023).

does not concern access to courts, nor does it amount to conduct that might independently violate the Fourteenth Amendment. State sovereign immunity therefore bars these claims.

*D. Nonsuable Entities*

Ploetz names as defendants the Winona County Sheriff's Department, the Winona County Attorney's Office, and the Winona County Highway Department. But "courts in the Eighth Circuit and this District have consistently held that county departments are not legal entities subject to suit separate from the county itself." *Campbell v. Hennepin Cnty. Sheriffs*, No. 19-CV-1348 (DWF/ECW), 2020 WL 589547, at *7 (D. Minn. Jan. 21, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 586770 (D. Minn. Feb. 6, 2020). The Court therefore dismisses the claims against the three departmental defendants.

Ploetz also names as defendants "all related subdivisions, officials, and employees." Compl. 1. This blanket designation identifies no specific individual or entity, describes no involvement by any putative defendant in a constitutional violation, and provides no notice to any putative defendant of what Ploetz claims he or she did to violate the law. The complaint thus fails to satisfy Rule 8's notice requirements, and the Court dismisses the claims against this group of unnamed defendants.

*E. Judicial Immunity*

Ploetz names as a defendant U.S. District Judge Laura M. Provinzino. The gravamen of Ploetz's claims against Judge Provinzino is her dismissal of an earlier lawsuit filed by Ploetz. According to Ploetz, Judge Provinzino erred by "fail[ing] to apply pro se and ADA standards." ECF No. 1-1 at 4. By way of background, Ploetz's earlier action presented a subset of the claims that he presents in this action—and there, as here, Ploetz submitted a complaint with hundreds of pages of exhibits attached to it. *See Ploetz v. Winona Cnty.*, No. 25-CV-3665 (LMP/DJF) (D. Minn. filed Sept. 12, 2025). In dismissing that action (without prejudice), Judge Provinzino indicated that she (like this Court) would not read the exhibits and try to identify claims and arguments for Ploetz. *See Ploetz v. Winona Cnty.*, No. 25-CV-3665 (LMP/DJF), 2025 WL 3567868, at *1 n.1 (D. Minn. Sept. 30, 2025), *aff'd*, No. 25-3414, 2026 WL 1601752 (8th Cir. Feb. 27, 2026). Judge Provinzino's refusal to do Ploetz's work for him—that is, to assume the role of advocate instead of judge—is the apparent source of Ploetz's present claims against Judge Provinzino.

Ploetz's claims against Judge Provinzino are frivolous. As an initial matter, the Eighth Circuit recently *affirmed* Judge Provizino's order dismissing Ploetz's lawsuit, which means that she did not err. More importantly, the claims that Ploetz now makes against Judge Provinzino are barred by judicial immunity. Judges are immune from suit for acts performed in their judicial capacity. *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 11–

12 (1991) (per curiam). This immunity is overcome only when a judge's actions were not taken in a judicial capacity or were taken in the complete absence of all jurisdiction. *See id*. Neither is true here.

The Court therefore dismisses all claims against Judge Provinzino. Because judicial immunity is an absolute bar, the dismissal is with prejudice.

*F. Claims Against Congressman Finstad's Office*

As discussed above, the complaint alleges that Congressman Finstad's office provided "incorrect ADA guidance," "failed to refer [Ploetz] to ADA coordinators," and generally "dismissed [Ploetz's] civil rights concerns." Compl. 10. These claims fail on several independent grounds.

First, the United States's sovereign immunity bars suits against federal offices unless Congress has waived it. *See, e.g.*, *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Section 702 of the Administrative Procedure Act may waive immunity for Ploetz's requests for injunctive or declaratory relief, *see* 5 U.S.C. § 702, but no such waiver applies to damages claims against Congressman Finstad's office. This Court therefore lacks jurisdiction over those claims.

On the merits, any § 1983 claim against Congressman Finstad's office fails because § 1983 provides a cause of action only against those acting under color of *state* law; a member of Congress and his staff act under the color of *federal* law. *Cf. Mohamud v. Weyker*, 144 F.4th 1099, 1103–04 (8th Cir. 2025) (affirming dismissal of § 1983 claims

against individuals found to be acting under authority of federal law). Nor is a *Bivens* claim available;[7] in very narrow circumstances, such claims may be brought against federal officials, but not against federal agencies or offices. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001). As for any ADA claims, Title II applies only to "public entities," defined by statute to include state and local governments and their instrumentalities, but not the federal government or its instrumentalities. *See* 42 U.S.C. §§ 12131(1), 12132. The office of a member of the United States House of Representatives falls outside that definition. Ploetz's Title II claims against Congressman Finstad's office are therefore dismissed.

At this point, then, the remaining defendants are Winona County, the City of Stockton, Holte, Kramer, the John Doe deputy who allegedly contacted Ploetz after the July 2023 incident, the Third Judicial District (as to the ADA and Rehabilitation Act claims only), and Watson (as to the § 1983 claims only).

*G. ADA Title II and Rehabilitation Act Claims (Counts I, II, VII, and VIII)*

The complaint asserts claims against most of the remaining defendants under both Title II of the ADA and the Rehabilitation Act. Courts recognize that the legal standards under both Acts are essentially identical. *See Folkerts v. City of Waverly*, 707

---

[7] *Cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

F.3d 975, 983 (8th Cir. 2013).[8] To state a Title II claim, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [public entity's] services, programs, or activities, or was otherwise subjected to discrimination by the [entity]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

As a preliminary matter, the remaining individual defendants potentially targeted by Ploetz's Title II claims are Holte, Kramer, and "Deputy John Doe." Because Title II provides recourse only against "public entit[ies]," however, public officials cannot be sued in their individual capacities under either Title II or the Rehabilitation Act. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999). The Court therefore dismisses any individual-capacity ADA and Rehabilitation Act claims against Holte, Kramer, and "Deputy John Doe."

After reviewing the complaint, the Court concludes that a single Title II/ Rehabilitation Act claim may proceed: the claim that Winona County (through Kramer)

---

[8] The main exception is that a Rehabilitation Act claim may be asserted only against a defendant who receives federal funding. For prescreening purposes, the Court assumes that Winona County receives such funding.

violated Ploetz's rights in the lobby of the County's Highway Department on July 17, 2023. Counts I and II may proceed with respect to that conduct only.[9]

Ploetz also asserts standalone causes of action (presumably against Winona County, alongside other defendants) for failure to provide an ADA coordinator (Count VII) and failure to provide ADA notice (Count VIII). Compl. 13. Ploetz cites 28 C.F.R. §§ 35.106 and 35.107. *See id.* But numerous courts have found that these regulations do not create a private right of action. *See, e.g.*, *Jones v. City of Detroit*, No. 17-11744, 2023 WL 1819141, at *2 (E.D. Mich. Feb. 8, 2023); *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 555–56 (D. Md. 2019). This Court agrees.

The Court held above that Ploetz's Title II claims against the Third Judicial District Court were not barred by Eleventh Amendment sovereign immunity. The Court will nevertheless dismiss those claims on the merits. Ploetz's Title II allegations against the Third Judicial District Court rest largely on its alleged failure to designate an ADA coordinator or post ADA grievance procedures as required by 28 C.F.R. §§ 35.106 and 35.107. But the fact that a state court failed to comply with two federal regulations does not mean that the state court denied meaningful access to anyone. Ploetz does not explain how he was prevented from having access to court services or how designation of an ADA coordinator or posting grievance procedures would have eliminated that

---

[9] Nothing in the complaint plausibly asserts any Title II or Rehabilitation Act claim against the City of Stockton (or even any relevant conduct by any city employee).

barrier to access. Nor does Ploetz identify any specific accommodation that he requested and was denied. For these reasons, the Court dismisses Counts VII and VIII with prejudice.

*H. ADA Retaliation Claim (Count III)*

Count III asserts an ADA retaliation claim under 42 U.S.C. § 12203. *See* Compl. 12. To state a retaliation claim, a plaintiff must allege that "(1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity." *Rinehart v. Weitzell*, 964 F.3d 684, 689 (8th Cir. 2020).

The only plausible § 12203 claim asserted by Ploetz is that, after he complained that his rights under the ADA were violated by Kramer on July 17, 2023, "Deputy John Doe" interacted with him in various hostile ways. That claim will proceed. Because it remains an open question whether § 12203 (which is part of Title V of the ADA) creates individual liability for retaliation, the Court will allow this claim to proceed against both "Deputy John Doe" and Winona County (the deputy's apparent employer). *See Judah v. Ovsak*, 550 F. Supp. 3d 687, 699–701 (D. Minn. 2021) (discussing individual-liability issue). To the extent that Count III asserts any other retaliation claim, that claim is dismissed.

I. *Constitutional Claims Under § 1983*

Counts IV and V allege that defendants violated Ploetz's rights under the Equal Protection Clause and the Due Process Clause. Count VI, alleging "Civil Rights Violations" under 42 U.S.C. § 1983, is duplicative of the claims based on more specific constitutional provisions. The Court therefore dismisses Count VI.

With respect to the complaint's equal-protection claims: The Fourteenth Amendment's Equal Protection Clause provides that a State may not "deny to any person within its jurisdiction the equal protection of the laws." This clause "generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994).

Equal-protection claims fall into two categories. *See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601–02 (2008). The first concerns "governmental classifications that 'affect some groups of citizens differently than others.'" *Id.* (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). In these cases, plaintiffs "allege that they have been arbitrarily classified as members of an 'identifiable group'" and then subjected to unequal treatment on account of that classification. *Id.* at 601 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

To the extent that Ploetz tries to allege this first type of equal-protection violation against the remaining defendants, he fails. The key problem is that disabled individuals, although protected by the ADA and similar statutes, are not a "suspect

class" for purposes of the Equal Protection Clause. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442–43 (1985). On the facts pleaded in his complaint, Ploetz does not have a plausible equal-protection claim of the first type.

The second type is a so-called "class of one" claim. *Engquist*, 553 U.S. at 601–02. "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference." *Id.* at 602. To plead a class-of-one claim, a plaintiff must allege that she is "similarly situated to others who allegedly received preferential treatment." *Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 564 (8th Cir. 2024) (quoting *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)). This is a "significant hurdle": a comparator must "be identical or directly comparable to the plaintiff in *all material respects*." *Id.* (quoting *Robbins*, 794 F.3d at 996 (emphasis added)).

That requirement is fatal here. Ploetz alleges numerous forms of maltreatment, but he does not identify a single similarly situated individual who received better treatment. The complaint therefore does not plead a viable class-of-one equal-protection claim. The Court dismisses Count IV.

Count V asserts violations of the Fourteenth Amendment's Due Process Clause.[10] The exact theory is unclear, but the Court interprets Ploetz's due-process claim as being related to (at most) four events: (1) his exclusion from the Highway Department lobby, (2) "Deputy John Doe's" alleged retaliatory contact, (3) the unwanted mowing of Ploetz's conservation property, and (4) Watson's allegedly incorrect statements to Ploetz about ADA rules and his service-dog rights. Because Ploetz does not specify whether his claims sound in procedural or substantive due process, the Court considers both types of claims.

"'To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law.'" *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (quoting *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999)). The complaint falls short on both elements. Ploetz does not identify the protected liberty or property interest of which he was deprived, nor the person or entity that was responsible for the deprivation, nor how that person or entity failed to afford him due process of law. His procedural-due-

[10] Count V also invokes the Fifth Amendment, but that amendment's Due Process Clause applies to only the federal government. *See Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009).

process claim rests entirely on conclusory assertions. The Court therefore dismisses Count V to the extent that it raises a procedural-due-process claim.

To plead a substantive-due-process claim, a plaintiff must allege that a government official's actions "'violated one or more fundamental constitutional rights' and were 'shocking to the contemporary conscience.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)). Fundamental rights are those "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (cleaned up). "Only the most severe violations of individual rights that result from the 'brutal and inhumane abuse of official power'" give rise to a substantive-due-process claim. *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quoting *C.N.*, 591 F.3d at 634).

The conduct described in the complaint fails to meet these standards. Being denied access to the lobby of a county building, being confronted by a sheriff's deputy, having one's property mowed with a contaminated mower, and receiving allegedly inaccurate guidance from a legislative staffer may be unpleasant, but none of this rises to level of a substantive-due-process violation. The Court therefore dismisses Count V.

*J. Claims of "Environmental Violations"*

Count IX alleges that defendants violated Minn. Stat. § 18.78. *See* Compl. 13. Section 18.78 governs "[n]oxious weeds control and management," generally requiring landowners and those responsible for public land to control "noxious weeds" as directed "by an inspector or county-designated employee." But Ploetz points to no authority, and the Court has found none, suggesting that § 18.78 provides a private right of action. The Court therefore dismisses Count IX with prejudice.

## III. SUMMARY

In sum, the Court dismisses all claims save the following: (1) Ploetz's claim that Winona County violated his rights under the ADA and the Rehabilitation Act on July 17, 2023, and (2) Ploetz's ADA retaliation claim that "Deputy John Doe" and Winona County retaliated against Ploetz for reporting the July 2023 incident. The Court will therefore grant the IFP application and direct the U.S. Marshals Service to effect service on Winona County.[11]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's claims that (1) Winona County violated plaintiff's rights under the ADA and the Rehabilitation Act on July 17, 2023, and

---

[11] Before the U.S. Marshal can serve "Deputy John Doe," Ploetz will have to determine his identity.

(2) Deputy John Doe and Winona County retaliated against plaintiff for reporting the July 2023 incident may proceed.

2. Ploetz's Application to Proceed *In Forma Pauperis* [ECF No. 4] is GRANTED.

3. The U.S. Marshals Service is directed to effect service of process on defendant Winona County consistent with Rule 4(j) of the Federal Rules of Civil Procedure.

4. All other claims asserted in the complaint are DISMISSED, some with and some without prejudice.

5. The following claims are DISMISSED WITH PREJUDICE:

   a. Claims for injunctive and declaratory relief against the Office of Congressman Brad Finstad;

   b. All claims against the Winona County Sheriff's Department, the Winona County Attorney's Office, the Winona County Highway Department, and U.S. District Judge Laura M. Provinzino;

   c. Plaintiff's individual-capacity claims under ADA Title II and the Rehabilitation Act against defendants Maureen Holte, Maureen David Kramer, and Deputy John Doe; and

   d. Counts VII, VIII, and IX as to all defendants.

5. All claims not identified in ¶ 1 or ¶ 5 of this Order are DISMISSED WITHOUT PREJUDICE.

6. Plaintiff's motion for accommodation [ECF No. 3] is DENIED.

Dated: September 24, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge